IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LONNIE KVAPIL,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

ORDER

12-CV-00956-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff Lonnie Kvapil, seeks judicial review of an administrative law judge's finding that he was not disabled within the meaning of the Social Security Act. Kvapil principally contends that remand is warranted because the ALJ's decision regarding his residual functional capacity ("RFC") fails to properly address physical and mental impairments. Kvapil contends that exclusion of these limitations ultimately tainted evidence supplied by the vocational expert. Kvapil further contends that the ALJ failed to properly credit his subjective complaints of pain. For the reasons set forth below, the case will be remanded for rehearing.

## BACKGROUND

### I. Procedural History

On November 24, 2009, Kvapil filed his application for disability benefits. (AR 153-157.) On March 18, 2010, Kvapil's application was initially denied and again on July 29 after reconsideration. (AR 97-100.) On September 3, 2010, Kvapil filed a timely request for a hearing. (AR 113-115.) On July 12, 2011, he testified at an administrative hearing before ALJ Theresa Hoskins Hart in Eau Claire, Wisconsin. (AR 22.) On

November 9, 2011, the ALJ issued an unfavorable decision denying benefits. (AR 19-37.) Kvapil filed a request for review of the hearing decision with the Appeals Council, which was denied on October 24, 2012, thus rendering the final determination of the Commissioner. (AR 1-4.) *See also* 20 C.F.R. § 404.927. Kvapil then filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. §405(g).

## II. Medical Evidence

### A. Physical Limitations

Kvapil struggles with arthritis in his hands that cause numbness, pain and stiffness in his fingers and palm. (AR 292.) Relatedly, Kvapil reports trouble gripping objects and using his hands for any extended period of time. (AR 75.)

Kvapil has also been diagnosed with a shoulder impairment. A 2010 MRI of Kvapil's shoulder revealed: "mild degenerative acromioclavicular changes, as well as small degenerative subchondral cysts in the humeral head," which are nonspecific but can be related to impingement syndrome." (AR 307.) Kvapil's medical records also document severe right shoulder pain for which he underwent extensive rehabilitation, but was considered not to be a surgical candidate. (AR 302.) As a result, Kvapil reported difficulty sleeping and finding a comfortable position that minimizes his shoulder pain. (*Id.*)

Kvapil's medical records further document his lower back pain that has progressively worsened over time. (AR 302.) Kvapil complains that the pain in his back radiates into both hips, making it difficult for him to walk or perform any physical activity. (*Id.*)

Finally, Kvapil's records document his on-going, uncontrolled diabetes. He is prescribed regular medication, and checks his blood sugar levels regularly. Kvapil reports that his diabetic symptoms include sweating and increased fatigue. (AR 286.) As a result of his on-going diabetes, Kvapil has bilateral glaucoma and cataracts and is no longer permitted to drive because of poor vision. (AR 302.)

### B. Mental Limitations

In March 2010, consultative examining psychologist Marcus P. Desmonde, Psy.D., found that Kvapil was capable of understanding simple to moderately complex instructions and would be able to carry out tasks (within any physical limitations he might have). (AR 311.) Dr. Desmonde also felt that Kvapil would work best in environments where he had limited contact with others. (*Id.*) Provided that Kvapil was compliant with his medications and abstained from alcohol, Desmonde opined that Kvapil would be able to tolerate the stress and pressure of competitive employment.

That same month, state agency psychologist Eric Edelman, Ph.D., opined that Kvapil was moderately limited in (1) social functioning and (2) concentration, persistence, and pace. (AR 331.) Four months later, in August 2010, state agency psychologist Kayla King, Psy.D., also opined that Kvapil was moderately limited in social functioning and concentration, persistence, or pace. (AR 365.) Dr. King further opined that Kvapil would be able to perform unskilled work, with limited exposure to the public. (AR 353.)

### III. Administrative Decision

In her decision, the ALJ found Kvapil to have severe impairments of diabetes, history of asthma, right shoulder tendinopathy with tear, adjustment disorder with history of episodic alcohol use, left hand arthritis, and obesity. (AR 25.) The ALJ nevertheless determined that Kvapil was capable of performing "light" level work with: further limitation to "frequent reaching, handling, and fingering; the inability to perform more than frequent reaching, handling and fingering; the inability to perform more than unskilled work that has no more than occasional and superficial interaction with the public; and the inability to more than occasionally reach overhead with the right upper extremity." (AR 28.) The ALJ also found that Kvapil "must avoid environments with moderate exposure to fumes, dusts, gases, or lung irritants." (*Id*.)

Given these limitations, the ALJ then determined that Kvapil could not return to his past work. (AR 32.) Based on the testimony of the vocational expert ("VE"), however, the ALJ concluded that Kvapil would be able to perform other work in the national economy, including employment as a security guard/system monitor (sedentary, 3,000 jobs) and mail clerk (light, 3,000 jobs). (*Id*.) The ALJ found, therefore, that Kvapil was not disabled under the statute.

## OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Secretary of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). It is for this reason that the ALJ's decision here must be remanded.

## I. The ALJ Failed to Address Kvapil's Mental Limitations

Kvapil has been diagnosed with anxiety, depression and personality disorder. (AR 362.) He principally challenges the ALJ's decision for failing to properly account for these limitations in concentration persistence and pace ("CPP") in formulating his RFC.[1] Kvapil further argues that this deficiency had a ripple effect at step five of the evaluation process by making hypothetical questions proposed to the vocational expert ("VE") defective and thus tainting the VE's opinion. The court agrees. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (stating "hypothetical questions posed to [VE's] ordinarily must include all limitations supported by medical evidence in the record.")

Here, at least two state agency doctors agreed that Kvapil has moderate limitations in his ability to "complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

---

[1] The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of the most a claimant can do despite his or her limitations. *Id.*

without an unreasonable number . . . of rest periods." (AR 336, 352.) Moreover, both of these doctors' opinions were credited. Dr. Edelman's assessment also noted several other moderate limitations in CPP. (AR 335.) A good number of those same limitations were adopted by Dr. King. (AR 351.) Based on this medical evidence, the ALJ found that "with regard to concentration, persistence and pace, the claimant has moderate difficulties." (AR. 27). At step four, however, the ALJ purported to accommodate for all of these moderate difficulties in the RFC determination by stating that Kvapil could not perform "[1] unskilled work that has [2] no more than occasional and superficial interaction with the public." (AR 28.)

The problem with the ALJ's finding is that the Seventh Circuit has overturned a vague limitation to "unskilled work" fails to properly accommodate for moderate deficiencies in CPP. *O'Connor–Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). Even if the Seventh Circuit permitted the ALJ to rely on the reference to unskilled work in the state doctor's reports, the reports themselves need to better explain why this is so given Kvapil's moderate limitations in CPP. *See* SSR 96–8p ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts"); *see also Huber v. Astrue*, 395 Fed. Appx. 299, 302 (7th Cir. 2010).[2]

Specifically, when such limitations are omitted from the RFC determination, the ALJ's hypothetical questions to the vocational expert are compromised. Based on

---

[2] Even though the state agency doctors said that Kvapil was capable of unskilled work, the ALJ is still required to translate any findings of moderate CPP limitations into cognizable work performance limitations in the RFC. Indeed the RFC assessment, as defined in the regulations, is "based on all the relevant evidence in [the claimant's] case record," not just a single sentence buried in the back-end of a report as the Commissioner would have the court believe here. 20 C.F.R. § 404.1545(a)(1) (the RFC is an assessment of the most a claimant can do despite his or her limitations.).

existing case-law, the court finds that these defects taint the substantiality of the vocational expert's evidence, thus warranting remand. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (when posing his hypothetical to the VE, the ALJ was required to include all of a claimant's limitations "to ensure that the vocational expert [did] not refer to jobs that the claimant cannot work"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).[3] For the reasons set forth here, as well as those is the court's earlier decision, remand is clearly required.[4]

## II. The ALJ Properly addressed Kvapil Physical Limitations

Kvapil also challenges the ALJ's formulation of his RFC based on physical limitations. Kvapil argues in particular that his RFC is inconsistent with the medical evidence. Unlike the first error in formulating Kvapil's mental limitations discussed above, the purported error here is given some level of deference as it challenges the substantiality of the evidence. Notwithstanding this, an ALJ must still make specific RFC findings based on all of the relevant evidence in the case record. The applicable Social Security Rule states that:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a

---

[3] *See also Nancy Traver-Musselman, Nancy v. Carolyn Colvin*, 12-CV-423 2014, WL 1007302 at *8 (W.D. Wis. March 14, 2014); *Amy Marchel v. Astrue*, 12-CV-47 (W.D.Wis., Nov. 16, 2012); *Gray v. Astrue*, 2009 WL 1228632 (N.D. Ind. May 1, 2009); *McGee v. Astrue*, 770 F.Supp.2d 945, (E.D.Wis. 2011) (remand for use of "simple, routine, repetitive" in RFC as substitute for finding of moderate CPP); *Kell v. Astrue*, 2011WL 2970891 (S.D. Ind., July 21, 2011).

[4] The court is not unsympathetic to the lack of guidance that has been afforded to the Commissioner on the CPP issue. *See generally O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

> regular and continuing basis . . . The adjudicator *must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved*.

SSR 96–8p (emphasis added).

Kvapil's attack on the ALJ's decision relies heavily on the italicized phrase above in challenging her finding that Kvapil could perform light work, arguing that this finding is inconsistent with the medical evidence.[5] The court disagrees.

As a general rule, a district court should not disturb the factual findings of ALJ decision because of the deference afforded them. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Here, however, Kvapil's legal argument lacks merit for two reasons. *First,* Kvapil fails to put forward any meaningful medical evidence that would undercut the ALJ's light work finding. Instead, he simply states that "plaintiff's impairments, as documented in the medical records, provide evidence that he would be unable to perform the requirements of light work." (Dkt. # 15 at 6.) Although there is reference to a 2010 MRI scan noting shoulder impingement, there is no analysis in the briefing of how this is inconsistent with the limitations that the ALJ found in addition to light work, including Kvapil's inability to do no more than: (1) frequent reaching, handling, and fingering; and (2) occasional overhead reaching with the upper right extremity. (AR 28.) Merely claiming an inconsistency is not enough; there must be some effort to demonstrate how the medical evidence runs contrary to the RFC determination. Kvapil's briefing falls short in this regard.

---

[5] While Kvapil lists many of his impairments as providing basis for a disability finding, only some are denoted as "severe" at step two of the evaluation process. But as counsel is aware, step three is *de minimis* in nature: a severe impairment at step two does not mean that it will translate into a disabling impairment at step 3-5.

*Second*, after inspecting the ALJ's decision, the court can discern no error in the substantiality of the evidence that the ALJ relied on to formulate the RFC, at least where Kvapil's physical limitations are concerned. In particular, the court finds Dr. Chan's evidence consistent with the RFC limitations that Kvapil could perform. For example, Dr. Chan opined that Kvapil could lift/carry 20 pounds occasionally and 10 pounds frequently, as well as stand/walk for about six hours and sit for about six hours in an eight-hour day. (AR 344.) Similarly, Dr. Chan's opinion supports the ALJ's finding, which restricted Kvapil to only frequent (not constant) gross and fine manipulation. (AR 28, 346, 350.) This evidence, coupled with Dr. Walcott's opinion, is more than enough to substantiate the ALJ's RFC determination. (AR 320.) *See Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."). As such, the court finds no error with respect to the ALJ's formulation of Kvapil's physical limitations.

### III. The ALJ's Evaluation of Kvapil's Credibility

Credibility is typically the province of the ALJ. *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination is "afforded special deference" because the ALJ is in the best position to see and hear the witness and determine credibility. *Id.* The court will only overturn an ALJ's credibility determination if it is "patently wrong." *Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003). Given that the RFC determination will need to be reformulated on remand to accommodate for Kvapil's moderate limitations in CPP, the ALJ may find that Kvapil's credibility is actually

9

bolstered. Because of this, the court will decline to rule on the ALJ's credibility determination at this time.[6]

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying Lonnie Kvapil's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 27th day of March, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[6] *See Mollett v. Astrue*, No. 3:11–CV–238 2012 WL 3916548, at *9-10 (N.D. Ind. Sept. 7, 2012) ("[b]ecause the ALJ's error regarding the hypothetical questions requires remand, the court need not consider the claimant's arguments regarding the remaining issues").